LYNCH PHILLIPS *v.* STATE OF MISSISSIPPI.

[45 South., 572.]

CRIMINAL LAW AND PROCEDURE. *Argument, scope of. Appeals.*

   The right to argue a criminal cause does not warrant the delivery
   of a dissertation to the jury touching appeals from convictions
   and their probable results.

FROM the circuit court of Calhoun county.

HON. JOSEPH T. DUNN, Judge.

Phillips, appellant, a negro, was indicted, and convicted of
the murder, sentenced to death, and appealed to the supreme
court.

The murder was proved, and the only ground for reversal of
the judgment urged in the supreme court was the action of
the trial court in sustaining the district attorney's objection
to the argument to the jury made by counsel for defendant.
The opinion of the court states the facts.

*A. T. Smith,* for appellant.

On the question of mitigating the sentence in case appellant
should be found guilty, the trial court should have allowed
the attorney for appellant to discuss the right to and conse-
quences of an appeal. A full discussion of the consequence
of an appeal might have caused one or more of the jury to vote
for life imprisonment rather than inflict upon appellant the
extreme penalty of the law.

*George Butler,* assistant attorney-general, for appellee.

It will be noted that appellant's counsel, in his argument to
the jury in the court below, urging that his punishment should
be fixed at a life sentence in the penitentiary, commented upon

the expense of an appeal, and cost of feeding a prisoner in jail pending appeals, stating that if appellant were sentenced to be hanged, an appeal would be taken, and in that event there was no telling what the supreme court might do with the judgment. These remarks were objected to by the district attorney, and the court below sustained the objection.

This court said, in the case of *Whit* v. *State,* 87 Miss., 564; s.c., 40 South., 324: "Juries have no concern with the action of this court." The jury in the case at bar were concerned only with the guilt or innocence of the accused, and not with the cost incident to the enforcement of the law in this particular case.

Most grievous error alone would warrant a reversal in such a case as this, where the defendant himself coolly testified that he cut the defenseless girl's throat without any reason therefor whatever, and no such error is to be found in the record.

CALHOON, J., delivered the opinion of the court.

This is one of the most demoniacal and butcherous murders to be found in the annals of modern jurisprudence. The record shows that Phillips had for a sweetheart a fifteen-year-old girl named Jeffie Pittman. It is shown by an eyewitness that the two and the witness were on the road, and that the appellant threw the girl down and cut her throat with a knife, and then having stepped off a short distance and seeing that she was not dead, but had raised herself up in the road on her hands and knees, appellant went back, turned her head over, put his hand on her breast, and again cut her throat until she was dead. To use the language of the witness, he "finished killing her" when he went back to where she had raised herself up. This direct testimony is confirmed by the confession of the appellant, afterwards made and thoroughly proved. The appellant was put on the stand in his own defense, and he testified that he cut the girl's throat and killed her, and when asked why he did it answered: "Well, why I done it, I done it; and why I done it, the girl was a sweetheart of mine, was my

sweetheart ever since the 1st of March, and was been doin' jus' as I say do till along the las' of July she sorter got contrary a little, and I was lovin' that gal, and jus' couldn't hep it, natchully lovin' her. I tell you the truth about it. I was a lovin' her better dan I was anybody, and dat evenin' I kilt her we was comin' down the road together, an' she calls me a son of a bitch, and when she called me a son of a bitch I told her not to do that any more, and she went on down the road a piece further, and she calls me a son of a bitch agin, an' I throwed her down an' cut her throat." On cross-examination he testified that he started off a piece, looked back, saw her getting up on her hands and knees; and then went back, took her head, and pulled it back and finished her.

To meet this overwhelming case there is only one reason assigned, and that is based on the action of the court on certain remarks made by the counsel for the accused in his argument to the jury. This advocate proceeded to say: "Gentlemen, if you convict this defendant as charged, it would be better that you send him to the penitentiary for life, for several reasons. One is that, if you do so, I can assure you there will be no appeal. He will be sent to the penitentiary to do hard work for the state all his life, and thus close the chapter; but if he is sentenced to be hung it is natural to expect that he may appeal, and he can now do so by making affidavit that he cannot make bond. This you all know would be expensive to the county, since to keep and feed prisoners is not a source of revenue, and you don't know what the other court will do." The district attorney objected to these remarks, and the court sustained the objection. The attorney for the accused then started again in his argument to comment upon the consequences of a verdict that would hang defendant, and used the following language: "It would be expensive to the county for such a verdict to be rendered, and he could appeal." The district attorney again objected, and the court sustained the objection, refusing to allow the attorney

to argue the defendant's right to appeal and the expense incident to an appeal. The court was clearly right, and argument is needless to show it. Juries must respond to the facts and the law, and have nothing whatever to do with the expense of appeals or feeding prisoners. Arguments of this sort should never be tolerated by any court. This is absolutely the only matter which the counsel for appellant, who was appointed for defendant by the court below, and who has done everything that a lawyer could do, is able to point this court to in order to sustain a reversal.

*Affirmed.*